2025 IL App (1st) 241961-U

SECOND DIVISION
June 24, 2025

No. 1-24-1961

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MICHELLE MCGIVNEY, individually and on behalf of others similarly situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 22 CH 08873 |
| v. | ) ) | |
| ITS TECHNOLOGIES & LOGISTICS, LLC, | ) ) | Honorable David B. Atkins, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the circuit court's order certifying a class of plaintiffs for a class action case. The circuit court did not abuse its discretion in finding that the case meets the statutory prerequisites for class certification and that plaintiff is an adequate class representative.

¶ 2    Defendant ITS Technologies & Logistics, LLC appeals an order from the circuit court in which the court certified a class for a class action suit. The circuit court found that all the prerequisites for class certification exist, and that plaintiff Michelle McGivney is an adequate class representative. Accordingly, the circuit court certified the class with plaintiff as the class representative. ITS Technologies appeals that decision, arguing that common questions do not

predominate in this case, that plaintiff is not an adequate class representative, and that a class action is not the appropriate method of adjudication. We find the trial court did not abuse its discretion when it found that the statutory prerequisites for class certification are present and that plaintiff can adequately represent the interests of the class. Accordingly, we affirm the circuit court's order certifying the class.

¶ 3                                                     BACKGROUND

¶ 4        Defendant ITS Technologies is a provider of services in the railway industry. It provides services such as the loading and unloading of railcars, equipment maintenance and repairs, inventory management, and operations management. Plaintiff Michelle McGivney was employed by ITS Technologies from 2010 to 2018. Her employment with the company ceased in 2018, but she then returned to work at ITS Technologies from 2019 to 2021. During the period relevant to this case, ITS Technologies utilized timeclocks for the purpose of keeping track of the hours worked by employees. The timeclocks at issue used the employees' biometric information for identification. Plaintiff, on behalf of a class of similarly situated individuals, claims that ITS Technologies violated the Biometric Information Privacy Act (740 ILCS 14/1 *et seq.* (West 2022)) (BIPA) when using these timeclocks.

¶ 5        In the class action complaint and in plaintiff's deposition, plaintiff states that she used a timeclock while employed by ITS Technologies in which her whole handprint was scanned for timekeeping purposes. Evidence has been presented during discovery, including a declaration from ITS Technologies' director of Human Resources, Norma Martinez, showing that ITS Technologies used NOVAtime timeclocks during the period relevant to this case, and those timeclocks work by scanning just a portion of an employee's fingerprint, not the entire hand.

¶ 6 ITS Technologies also presented evidence during discovery that, about four months into the period relevant to this case, it implemented a "consent at the clock" procedure that prompted workers before using the timeclock that they were required to agree to give consent to the usage of their biometric data before clocking in to work. In addition, hundreds of ITS Technologies employees have their employment with the company covered by a collective bargaining agreement, but hundreds of other employees are not part of any collective bargaining unit.

¶ 7 Plaintiff filed this case seeking damages for the alleged improper collection and use of her biometric information. She sought to represent a class of similarly situated individuals, *i.e.* the other employees of ITS Technologies who used the same timekeeping technology as her that required the input of their biometric information to clock in and out of work. Three other ITS Technologies employees have initiated their own separate, individual lawsuit against ITS Technologies for the same alleged violations of the BIPA.

¶ 8 After this case was filed and after some motion practice took place, plaintiff moved for class certification. Defendant opposed plaintiff's motion to certify the class arguing that common questions do not predominate amongst the putative class. Defendant argued in response to the motion for class certification that hundreds of the employees that used the timeclock at issue have their employment covered by a collective bargaining agreement, so that those employees' claims would be preempted by federal law and require different treatment. Defendant further argued in response to the motion for class certification that hundreds of employees provided at-the-clock consent, such that those employees should be excluded from the case. Finally, defendant suggested that individualized considerations exist regarding what technology the employee used because plaintiff has insisted that she used hand-scanning technology while ITS Technologies has always used only fingerprint scans.

1-24-1961

¶ 9     The circuit court entered a written order certifying the class to proceed with the BIPA claims against ITS Technologies. The court explained in its written order that over 800 employees used the timeclock systems at issue during the relevant period and common questions clearly predominate. The circuit court rejected ITS Technologies' arguments that plaintiff is not an adequate class representative, finding her to be an adequate plaintiff to protect the interests of the other class members. As such, the circuit court certified the class of all persons in the State of Illinois who are or were employed by ITS Technologies and whose handprint or fingerprint or other biometric information is or was collected, captured, or otherwise obtained by the company during the relevant period. Defendant now appeals the circuit court's decision to grant class certification in this case.

¶ 10                                         JURISDICTION

¶ 11     On August 29, 2024, the circuit court granted plaintiff's motion for class certification. Defendant timely petitioned for leave to appeal to this court under the Illinois Supreme Court Rules. See Ill. S. Ct. R. 306(a)(8) (West 2022) (eff. Oct. 1, 2020) (a party may petition for leave to appeal to the Appellate Court from an order granting or denying certification of a class action case). We granted defendant's motion for leave to appeal. The matter was fully briefed by the parties, and we now address the issue presented in this interlocutory appeal.

¶ 12                                           ANALYSIS

¶ 13     Defendant argues that the circuit court erred when it certified the class for a class action. Defendant argues that common questions do not predominate over individual issues amongst the class members. Defendant also argues that the circuit court failed to properly consider facts concerning the propriety of plaintiff as the class representative. Finally, defendant argues that a class action is not the appropriate method of adjudication for the claims in this case.

- 4 -

¶ 14　　In Illinois, an action may be maintained as a class action only if the court finds: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (West 2022).

¶ 15　　The purpose of a class action suit is to promote efficiency in litigation by permitting a representative party to bring a claim on behalf of a large number of people with similar claims. *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App (1st) 131465, ¶ 9. In determining whether a proposed class meets the requirements for certification, courts must accept the allegations of the complaint as true. *Id*. A circuit court has broad discretion to determine whether the proposed class should be certified, but the court should err in favor of maintaining class certification. *Id.* As such, we will not reverse a circuit court's judgment granting class certification absent a "clear abuse" of discretion, which occurs only when the court's ruling is clearly arbitrary, fanciful or unreasonable. *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007).

¶ 16　　Our review of the circuit court's analysis as to whether to certify a class is limited. *Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 761 (2008). We are to review only the circuit court's exercise of discretion; not engage in an independent evaluation of the facts the trial court found to justify class certification. *Id*. In order to disturb a circuit court's ruling to grant or deny class certification, we must find that the opposite outcome is the only reasonable conclusion. *Id*.

¶ 17　　*I. Predominance of Common Questions*

¶ 18　　Defendant argues that common questions among the class members do not predominate

over individualized considerations, so class certification is inappropriate. To satisfy the statutory requirement that a common question of fact or law predominates over questions affecting only individual class members, the plaintiff must show that the successful adjudication of his individual claim will establish a right of recovery in favor of the other class members. *Bayeg v. Admiral at the Lake*, 2024 IL App (1st) 231141, ¶ 37 (citing *S37 Management, Inc. v. Advance Refrigeration Co.*, 2011 IL App (1st) 102496, ¶ 17). Determining whether issues common to the class predominate over individual issues requires the court to identify the substantive issues that will control the outcome of the litigation, assess which issues will predominate, and then determine whether these issues are common to the class. *Id*. (citing *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 449 (2006)). Issues common to the class predominate if a judgment in favor of the class members would decisively settle the entire controversy so that all that would remain is for the other class members to file proof of their claim. *Id*. When conducting the inquiry into the predominance requirement, the court may look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law. *Bemis v. Safeco Insurance Company of America*, 407 Ill. App. 3d 1164, 1168 (2011).

¶ 19   Defendant argues that plaintiff alleges she used a timeclock that collected a scan of her entire hand while the other class members used a timeclock that collected a partial scan of their fingertip. Defendant also points out that the record contains evidence that ITS Technologies replaced its fingerprint scanning timeclocks in 2019 and began using timeclocks that require the entry of a punch code to clock in and out. Plaintiff has alleged that she used the handprint-scanning timeclock after 2019 even after the original fingerprint-scanning timeclocks were replaced. Defendant argues that the fact that plaintiff claims to have used different timeclocks than the rest of the class belies the circuit court's finding that there is commonality among the

class. Defendant asserts that individualized discovery and depositions to confirm the timeclock used by each plaintiff will be required.

¶ 20     Our supreme court has explained that "[t]he test for predominance is not whether the common issues outnumber the individual ones, but whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Smith v. Illinois Central Railroad Co.*, 223 Ill. 2d 441, 448-49 (2006). Defendant has produced evidence in discovery admitting that it used fingerprint-scanning timeclocks to collect its employees' biometric information. Defendant nevertheless seizes upon plaintiff's claims in the complaint and at her deposition in which plaintiff stated that her biometric information was improperly obtained through a scan of her hand rather than a scan of her finger. While the distinction is not necessarily trivial, it is not material either—plaintiff's recollection that defendant scanned her hand instead of just a fingertip is not determinative of the issue of whether defendant is liable. As the circuit court observed when it concluded that certification of the class was appropriate, "[d]efendant does not deny that it collected [plaintiff's] biometric information in the same way as it did hundreds of other employees, which is the core issue of the case."

¶ 21     Defendant argues that plaintiff's deposition statement that her hand was scanned, rather than her finger, should result in an individualized inquiry of more than 800 employees about what technology was used to collect their biometric information. Defendant suggests that an inquiry is required, despite the fact that defendant has already admitted it used one, and only one, device to collect its employees' biometric information. The issue to be determined in the case is whether defendant improperly collected its employees' biometric information without obtaining written consent as required by the BIPA. See 740 ILCS 14/15(b)(1-3) (West 2022). Plaintiff's statement, that her hand was scanned rather than her finger, does not in any way alter the fact

that common questions among the class members clearly predominate.

¶ 22　The circuit court, cognizant of the minor discrepancy, certified the class to include: all persons in the State of Illinois who are or were employed by ITS Technologies and *whose handprint or fingerprint or other biometric information* is or was collected, captured, or otherwise obtained by the company during the relevant period. The circuit court properly framed the class of persons sharing a common claim. The class, as framed by the circuit court, has a common claim that accurately presents the predominant question in the case, and that question is suitable for, if not demanding of, class-wide resolution.

¶ 23　Defendant also argues that the question of whether class members consented to the collection of their biometric information must be determined on an individualized basis. However, the employees who are alleged to have given consent to ITS Technologies gave the alleged consent on identical terms, in response to identical prompts, at or around the same time. It is a common question among the class members whether their claims are vitiated by their putative consent. A general and uniform ruling on whether the consent given by those employees is effective to bar their claims is appropriate here and serves the ends of efficiently resolving several hundred identical claims with identical defenses asserted by defendant. Moreover, the alleged consent was given by electronic means at the time of an employee clocking in, so defendant knows exactly which of the employees gave the alleged consent for biometric data collection. An individualized inquiry with individualized discovery as to each individual is not required.

¶ 24　Defendant also argues that the issue of potentially individualized damages among the class members should have caused the circuit court to deny class certification. Defendant contends that the existence, type, and extent of damages require individualized determinations.

Defendant explains that damages would vary by class member because the number of potential violations will differ by employee, because some class members may seek actual damages rather than just statutory damages, and because defendant's mental state must be determined as to each individual class member.

¶ 25     *Bayeg v. Admiral at the Lake*, 2024 IL App (1st) 231141, is a case similarly alleging violations of the BIPA, where the court determined that if plaintiff establishes liability, the damage calculation is formulaic. In her complaint, plaintiff specifically seeks a damages award for each violation of the BIPA in the amount set forth in the statute and makes no claim for any other actual damages. Plaintiff has confirmed on appeal that she and the class seek no actual damages and instead seek only statutory damages under the BIPA. Although the number of potential violations will likely differ among members of the class, electronic records will provide the number of times each employee clocked in or out of work where biometric information was collected. If liability is established, then the calculation of damages will be straightforward based on a simple formula.

¶ 26     Defendant argues that *Bayeg* should not apply because, in that case, there was a spreadsheet that easily allowed for the calculation of damages. In this case, such a spreadsheet or a similar database could be easily compiled to display the alleged violations. The fact that such a dataset already existed at the time of class certification in *Bayeg* is no reason to treat this case differently. Additionally, whether defendant's alleged violations of the Act were negligent, reckless, or intentional is not a matter that will vary on an employee-by-employee basis. An individualized inquiry of the company's mental state *vis a vis* each employee will not be necessary. In short, despite defendant's efforts to distinguish the case from *Bayeg*, we find it is indistinguishable, and we conclude that the same result is appropriate in this case. See *id*. at

¶¶ 40-44.

¶ 27     Defendant points out that plaintiff seeks "per-scan damages" and argues that the individualized character of the damages should defeat class certification. Recently, the General Assembly amended the BIPA to stipulate that a plaintiff is limited to recovering for a single violation of the BIPA even if the defendant collected the plaintiff's biometric information numerous times. The amendment to the statute provides that if a defendant "in more than one instance *** obtains the same biometric information from the same person using the same method of collection [the defendant] has committed a single violation *** for which the aggrieved person is entitled to, at most, one recovery." 740 ILCS 14/20 (West 2024). Defendant contends that "the only situation in which the potential for individual damages would not preclude class certification *** is if the recent BIPA Amendment limiting damages is applied retroactively."

¶ 28     The parties dispute whether the amendment providing damages for only a single violation should be applied retroactively. The issue has been decided in the federal district court on several occasions, and the court has uniformly held that the amendment does not apply retroactively. See *Willis v. Universal Intermodal Servs., Inc.*, No. 21 C 1716, 2025 WL 1455791, at *2 (N.D. Ill. Apr. 2, 2025); *Jones v. USP Chicago, Inc.*, No. 23 CV 16817, 2025 WL 1547290, at *5 (N.D. Ill. May 29, 2025); *Giles v. Sabert Corp.*, No. 24 C 2996, 2025 WL 274326, at *4 (N.D. Ill. Jan. 21, 2025); *Schwartz v. Supply Network, Inc.*, No. 23 CV 14319, 2024 WL 4871408, at *5 (N.D. Ill. Nov. 22, 2024).

¶ 29     In this case, we are dealing solely with the issue of whether the trial court abused its discretion when it certified the class. The issue at hand does not require us to determine the retroactivity issue and it would be particularly unwise to address the question here where it is not

imperative that the question be determined at this stage and where the issue is raised for the first time on appeal.

¶ 30    Here, for purposes of the issue of class certification, it is not outcome determinative whether potential damages are ultimately awarded on a per-scan basis or for a single violation. As discussed in *Bayeg*, if damages are awarded on a per-scan basis, then the award would be a simple multiplication of the amount of violations and the statutory penalty. *Bayeg*, 2024 IL App (1st) 231141, ¶ 40. If the amendment is applied retroactively, then, as defendant concedes, the issue would not preclude class certification and the determination of damages would be even more straightforward. Regardless of whether the statutory amendment is applied retroactively or prospectively, the common issue of whether defendant violated the Act will be the predominant issue and the object of most of the efforts of the litigants and the court and, thus, the potential for differing damage awards among the class members is not an issue that defeats commonality. See *Smith*, 223 Ill. 2d at 448-49.

¶ 31    As a final point on the issue of whether common issues predominate over individual ones, defendant argues that more than 250 of the 870 employees who are part of the class are members of collective bargaining units. Defendant contends that "[w]hether these individuals' BIPA claims are preempted by the Labor Management Relations Act, 29 U.S.C. § 141, *et seq*., (LMRA) is an individualized inquiry 'because each applicable CBA has [a] provision governing time and payroll[.]' " Thus, defendant suggests that a court must determine on an individual basis whether each employee was subject to a collective bargaining agreement and whether that employee's claims are subject to dismissal based on federal preemption. Defendant argues that the evidence submitted in discovery, including the declaration of Norma Martinez, shows that there are potentially 13 different collective bargaining agreements that could be at issue here and

those agreements contain materially differing language as to the terms covering timekeeping and payroll that would have to be interpreted individually to evaluate whether a particular class member's claims are preempted.

¶ 32    As with the prior issue of damages, it is readily ascertainable to defendant which employees were part of collective bargaining agreements at the relevant times. The issue of whether some of the class members' claims are preempted is not a predominating issue in the overall scope of the litigation. If defendant wishes to challenge a portion of the class's claims for dismissal based on preemption, it may do so, and the result may well apply to dozens of the class members' claims. But there is no reason that the existence of the collective bargaining agreements would be an impediment to class-wide resolution of the predominant questions in the case, those pertaining to defendant's alleged violations of the BIPA.

¶ 33    If it is truly necessary, the circuit court could establish subclasses of employees based on their collective bargaining units. See *Clark v. TAP Pharm. Products, Inc.*, 343 Ill. App. 3d 538, 548-49 (2003) (if there are some questions of law or fact that differ among class members, the court may institute subclasses, but the class action will not be defeated solely because of some factual variations among class members).

¶ 34    Defendant suggests there would need to be so many subclasses to address the various differences in the case that the reasoning for using a class action would cease to exist. We do not share defendant's concern that the factual variations at hand are so numerous or so serious that they would result in any difficulty managing the litigation. See *id.*; *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 677 (2006) (if necessary, questions that are peculiar to individual class members may be determined in ancillary proceedings while common questions are resolved class wide).

¶ 35    The circuit court concluded that "the core issues of how the employees' biometric information was collected and maintained, and whether they adequately consented to the same are common to most or all putative class members." The circuit court did not clearly abuse its discretion when it determined that common questions predominate over any questions affecting individual members because we do not find that the opposite outcome is the only reasonable conclusion. *Cruz*, 383 Ill. App. 3d at 761.

¶ 36    *II. Adequacy of Plaintiff as Class Representative*

¶ 37    Defendant argues that plaintiff is not an appropriate class representative. Defendant reiterates its point about plaintiff claiming to have scanned her hand rather than her finger to argue that plaintiff is asserting she used a different technology, collecting a different type of biometric information, as opposed to the other class members. Defendant further argues that the discrepancy in plaintiff's statements shows that plaintiff is unfamiliar with the case and that she is making distinct claims from the other members of the class.

¶ 38    The adequate representation requirement as a prerequisite for the maintenance of a class action case ensures that class members receive proper, efficient, and appropriate protection of their interests. *Gordon v. Boden*, 224 Ill. App. 3d 195, 203 (1991). The test to determine the adequacy of representation is whether the interests of those who are parties to the case are the same as those who are not joined and whether the litigating parties fairly represent those not joined. *CE Design Ltd.*, 2015 IL App (1st) 131465, ¶ 16. The bar for representational adequacy is low. *Bayeg*, 2024 IL App (1st) 231141, ¶ 55. For a class representative to be considered adequate, the class representative must: (1) be a member of the class; (2) not be seeking relief that is potentially antagonistic to non-represented members of the class; and (3) have the desire and ability to prosecute the claim vigorously on behalf of herself and the other class members.

*Ballard RN Ctr., Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2014 IL App (1st) 131543, ¶ 46 (reversed in part on other grounds).

¶ 39    The record shows that plaintiff's interests are aligned with the other class members here. Plaintiff, like all the other members of the class, is seeking statutory damages for violations of the BIPA based on defendant's alleged improper collection of her biometric data. There is nothing in the record to indicate that plaintiff's interests are in any way at odds with the rest of the class members. They are all seeking the same outcome based on the same alleged wrong. Defendant does not point to any record evidence showing a real conflict between plaintiff's interests and those of the rest of the class.

¶ 40    To argue that plaintiff is an inadequate class representative, defendant relies on *Byer Clinic & Chiropractic, Ltd. v. Kapraun*, 2016 IL App (1st) 143733, ¶ 26 where this court applied a heightened standard for named plaintiffs to act as class representatives. We have since expressed doubt about the validity of the statements of law in the *Byer* decision and recognized it as an outlier. See *Bayeg*, 2024 IL App (1st) 231141, ¶ 52 (petition for leave to appeal denied, (Table) 244 N.E.3d 267 (September 25, 2024)). We agree with the analysis and statement of the law in *Bayeg* that the true question for the adequacy of the class representative is whether the named plaintiff can and will fairly represent the unnamed class members.

¶ 41    The record here demonstrates that plaintiff regularly communicates with class counsel about the litigation, has participated in written and oral discovery, and she demonstrated a working knowledge of the material facts and law when giving her deposition. There is also evidence in the record that plaintiff understands her role as class representative and understands what is expected of her as the representative of that class. Plaintiff has shown that she is a member of the class, is not seeking anything that would be antagonistic to the other class

members, and all indications are that she has the ability and desire to act as the class representative. More importantly, defendant has not submitted any evidence to show plaintiff does not meet those criteria. The circuit court found that "[p]laintiff appears at least basically familiar with the key facts so as to be a sufficient representative." Defendant has failed to show that the circuit court clearly abused its discretion when it found plaintiff to be an adequate class representative.

¶ 42     Defendant also casts doubt on plaintiff's motivations for acting as the class representative in this case. Defendant points out that plaintiff's employment was terminated, and plaintiff has suggested she has a claim for wrongful termination against defendant. Defendant also points out that plaintiff has already filed for bankruptcy once and considered filing for bankruptcy again before this case was filed, and there is a pending debt collection action against plaintiff. The circuit court found that the history between the parties and the financial incentives potentially available to plaintiff were not a basis for denying class certification. Indeed, defendant has not put forth any evidence that there is an actual conflict between plaintiff and the other class members or shown that she cannot fairly and ably litigate the claims. The circuit court highlighted that, despite plaintiff's alleged motives, "[d]efendant does not deny that it collected [plaintiff's] biometric information in the same way as it did hundreds of other employees, which is the core issue of the case." We agree with the circuit court that neither of the circumstances set forth by defendant preclude plaintiff from acting as the class representative.

¶ 43     *III. Whether Class Action is an Appropriate Method for Adjudicating the Controversy*

¶ 44     Defendant also argues that a class action is not an appropriate method for adjudicating this case. To satisfy the requirement that a class action is the appropriate method for the fair and efficient adjudication of the controversy, a plaintiff need only show that proceeding as a class

can best secure economies of time, effort, and expense and promote a uniformity of decision or can accomplish the other ends of equity and justice that class actions seek to obtain. *Clark*, 343 Ill. App. 3d at 552.

¶ 45　In making this argument, defendant raises many of the same issues it raised to argue that common questions do not predominate in the case. Defendant argues here, as it did above, that a class action is not the appropriate method for adjudicating this case because there are individualized issues among members of the class, the damages for each class member are individualized, preemption may exist for some claims, consent may bar some claims, and actual damages will vary greatly among class members. All of those issues are addressed in Part I of this order, and we have already explained why those issues do not preclude class certification.

¶ 46　As for the issues not addressed previously, defendant argues that a class action is not appropriate here because the damages are potentially substantial for each class member. Defendant also argues that class treatment is not appropriate here because three members of the class have brought a separate case against defendant in which those members are seeking to litigate their BIPA claims against defendant directly.

¶ 47　Defendant relies on *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 616 (1997) in which the Supreme Court of the United States explained that class action cases may be inappropriate when each class member's claim could be large. The Court explained that when individual class members have large sums at stake, those individuals' interest in conducting their own separate lawsuits may outweigh the interests furthered by class action litigation such that the interests of the class should yield to the individuals' interests and class certification would not be appropriate. *Id.*

¶ 48　Because the class members in this case could potentially be entitled to a statutory damage

award for up to $5,000 for each time the employee clocked in or out of work, defendant posits that each member of the class could potentially secure an award of more than $2 million. Defendant thus suggests that the argument for conducting this case as a class action is severely weakened because each class member has enough at stake to litigate the claim individually.

¶ 49    Similar to the issues above, we recently addressed this same argument in a case involving the same subject matter. In *Bayeg*, 2024 IL App (1st) 231141, ¶ 43, we found that the potential for a large damages award did not change the fact that common issues predominated over individual issues. *Id*. We explained that damages under the Act are discretionary, so that the circuit court was in a position to fashion an award that achieved the objectives of the Act: fairly compensating class members and deterring future violations, while not destroying the defendant's business. *Id*. (citing *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, ¶ 42). There, as here, the potential for a large award for class members did not show that proceeding as a class would be an inappropriate method for adjudicating this case. *Id*. While the potentially high dollar value of the class members' claims is a factor a circuit court can consider in determining whether to certify a class, defendant has failed to show that the trial court clearly abused its discretion here by not finding that consideration to be determinative.

¶ 50    Defendant also argues that class action treatment is not proper here as evidenced by the existence of individual BIPA claims against defendant by class members. Defendant provides no supporting legal authority for this argument. Accordingly, the argument is forfeited. See *Zdeb v. Allstate Ins. Co.*, 404 Ill. App. 3d 113, 121 (2010) (arguments raised but not supported by reasoned argument and citation to relevant authority are forfeited). As such, defendant has failed to demonstrate that the circuit court clearly abused its discretion when it certified the class in this case.

¶ 51                             CONCLUSION

¶ 52    Accordingly, we affirm.

¶ 53    Affirmed.